UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

STEVEN ESRICK, and KIKI ESRICK,

        Plaintiffs,

-vs-                                           Case No. 5:08-cv-50-Oc-10GRJ

DENNIS MITCHELL, KIM BURNETTE a/k/a
Kim Burnette Mitchell, KIMBERDEN FARM,
INC., a Florida corporation, and MICHAEL
D. LOKAI,

        Defendants.
_____

## **O R D E R**

The Plaintiffs have alleged state-law claims of breach of contract, fraud, and negligent misrepresentation against the Defendants arising out of the sale of a show horse in Ocala, Florida. The Parties have filed cross-motions for summary judgment (Docs. 56, 59). The Court concludes that material issues of fact remain in dispute such that both motions are due to be denied.

## **Undisputed Facts**

Plaintiffs Steven and Kiki Esrick are the parents of a teenage daughter, Devon, who is a competitive equestrian, specializing in show jumping. Through the end of 2007, the Esricks resided in Aspen, Colorado. In January 2008, the Esricks moved to Florida.[1]

---

[1]Although the Plaintiffs are now residents of Florida, they were residents and citizens of Colorado at the time this lawsuit commenced. Therefore, their change in residency does not destroy the Court's subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. See (continued...)

Defendants Dennis Mitchell and Kim Burnette Mitchell are husband and wife. They own and operate horse jumping farms in both Ocala, Florida, and Knoxville, Tennessee. Defendant Kimberden Farm, Inc., ("Kimberden"), is the Mitchell's horse farm in Ocala. The Defendants sell and buy horses, and act as brokers for other sellers and buyers. Kim Mitchell is a shareholder, director, and officer of Kimberden. Dennis Mitchell's ownership interest in Kimberden is not clear from the record, although he admits that he is the corporation's secretary and employee. Kim Mitchell runs the corporation's business side, and conducts almost all of the sales and other transactions, while Dennis Mitchell is more involved with the training, assessment, selection, and care of the horses.

In approximately November 2006, the Esricks purchased from Kimberden a 7 year old horse named Rappa, which the Esricks intended for Devon's use at horse shows. Rappa was valued at $75,000, and the Esricks purchased the horse by trading one of their other horses, Wizard, along with $40,000 in cash. It soon became clear that Rappa was not a good fit for Devon, and the Esricks contacted the Mitchells about trading Rappa for a different horse. The Mitchells agreed, and the Esricks made several trips to Kimberden to locate a more suitable horse. The Esricks also brought along their horse trainer at the time, Kim Dixon.

---

[1](...continued)
Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428, 111 S. Ct. 858, 860 (1991) ("[D]iversity of citizenship is assessed at the time the action is filed. We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.")

In March 2007 the Esricks settled on another horse named Tressor. The horse was actually owned by Carol McKay, an acquaintance of the Mitchells. Kimberden acted as Ms. McKay's broker, and the Mitchells negotiated the sale of Tressor to the Esricks. The Esricks purchased Tressor for $90,000, which consisted of the trade-in value of $75,000 for Rappa, plus an additional $15,000 in cash.[2]

Prior to the sale, Dennis Mitchell told the Esricks and Kim Dixon that Tressor was either 8 or 9 years of age. Dennis Mitchell now claims that he did not know the actual age of the horse, but was relying on information relayed to him through Ms. McKay's associates, David Jennings and Michael Kirby.

The sale was conditioned on an acceptable pre-purchase veterinary report. Defendant Michael D. Lokai performed the veterinary examination and report, which stated that Tressor was 8 years old and in good physical condition. Once the Esricks were notified that Tressor had passed the pre-purchase examination, they agreed to go forward with the sale. The Mitchells shipped Tressor to the Esricks, who were in California at a horse show at the time. Tressor arrived on March 25, 2007, and the Esricks wired $15,000 to the Mitchells, in care of Kimberden, on March 26, 2007. The entire transaction was performed based on an oral agreement, up until this date neither party had reduced any of the agreement's terms to writing.

---

[2]The Esricks had returned Rappa to Kimberden some months earlier.

On either March 26 or 27, 2007, Kim Mitchell prepared and express mailed to the Esricks, through Kim Dixon, a Bill of Sale.[3] Kim Mitchell also included in the package Tressor's United States Equestrian Federation show records, and the official veterinary report. The Bill of Sale stated that Tressor was actually 11 years old. The Mitchells claim that they did not receive any documents from Ms. McKay until after the sale to the Esricks had been completed, and therefore did not learn of Tressor's true age until Kim Mitchell prepared the Bill of Sale.

Kim Dixon reviewed the documents and immediately brought the difference in Tressor's age to Kiki Esrick's attention. Kiki Esrick contacted Kim Mitchell and demanded that the Mitchells take Tressor back and refund the entire $90,000 purchase price. Kim Mitchell refused to do so. Kiki Esrick also contacted Ms. McKay, who stated that Tressor was indeed 11 years old, and that Ms. McKay never told anyone otherwise.

On April 1, 2007, Steven Esrick spoke by telephone with Dennis Mitchell, and again demanded a full refund in exchange for the return of Tressor. Steven Esrick contends that Dennis Mitchell apologized for the error and agreed to take back Tressor and to refund the entire $90,000 purchase price. Steven Esrick further claims that he agreed to pay the return shipping costs, and that Dennis Mitchell suggested Devon ride Tressor for a few days while he made arrangements to pick up Tressor. However, after a few days the

---

[3]Kim Mitchell prepared the Bill of Sale, which is dated March 26, 2007. The Esricks, however, contend that the documents were not express mailed to them until March 27, 2007. It is undisputed, however, that the documents were not mailed until after the Esricks had received Tressor and wire transferred the $15,000 to the Mitchells.

4

Mitchells stopped returning the Esricks' phone calls, ceased all communications, and refused to go forward with the return of Tressor.

Dennis Mitchell recalls his phone conversation with Steven Esrick somewhat differently. He claims that he told Steven Esrick that he would take back Tressor in exchange for returning Rappa to the Esricks, along with the $15,000 in cash. Dennis Mitchell contends that he never agreed with Steven Esrick or anyone else to return the full purchase price. Instead, he claims that Steven Esrick agreed to keep Tressor for a while to see if the horse worked out for Devon. Dennis Mitchell further contends that in a separate conversation he told Kim Dixon, in her role as the Esricks' trainer and agent, that until an agreement was reached with respect to Tressor that the horse was not to be shown unless the Bill of Sale was signed and returned.

Dennis Mitchell does admit that he agreed to work with the Esricks in the future if Tressor ultimately did not work out for them, and would have been willing to trade-in Tressor for another horse, as had been done with Rappa.[4] Dennis Mitchell further admits, however, that soon after his April 1, 2007 phone call with Steven Esrick, he ended all contact with the Esricks.

At some point after the sale was completed, the Mitchells received a signed Bill of Sale, with what purports to be Steven Esrick's signature. The Esricks contend that they

---

[4]Apparently this was Dennis Mitchell's normal "horse back guarantee" policy - if an owner's horse did not work out as an acceptable fit between the horse and rider, the Mitchells would work to find a replacement horse and would take the original horse back in trade.

never signed any Bill of Sale, never agreed to sign a Bill of Sale, and that the signature on the Bill of Sale is not Steven's.

Once the Mitchells ceased communications, the Esricks had no choice but to take Tressor with them to Vancouver, Canada, where Devon was training. Although the Esricks have tried to sell Tressor, it appears that they maintain ownership of the horse as of the date of this Order. There is also some dispute over whether the Esricks allowed Devon to ride and/or show Tressor at the March 2007 horse show in California, or at any other time.

The Esricks contend that they made clear to the Mitchells throughout all of their dealings in 2006 and 2007 that they were only interested in purchasing younger horses of no more than 7 or 8 years of age, and that if they had been aware of Tressor's real age, they would not have gone through with the sale.[5] Steven Esrick claims he had several lengthy discussions with Dennis Mitchell about the need to purchase younger horses so the Esricks would be able to trade out of a horse as Devon's abilities grew, while the horse still possessed jumping life and value. Dennis Mitchell admits that he was aware that age was a consideration in the purchase of a horse, but he believed that finding the right horse was a more important factor, and that if the right horse in terms of skill, temperament, and training was available, age would not be a deterrent.[6]

---

[5] The Esricks have also produced evidence that from 2003 to date they have purchased 11 horses, and that other than the very first horse purchased, they have all been 7 or 8 years old.

[6] Kim Dixon, the Esrick's horse trainer and agent, does not recall ever telling the Mitchells specifically that the Esricks were only interested in a horse that was 8 or 9 years old, but was very much aware that the age of the horse was of utmost importance to the Esricks.

On September 20, 2007, the Esricks filed a complaint in the District Court, Pitkin County, Colorado against all of the Defendants, alleging breach of contract, fraud, and negligence (Doc. 3). On November 13, 2007, Defendant Michael Lokai removed the case to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1332 (Doc. 2). The case was subsequently transferred here on order of the District of Colorado on February 4, 2008 (Doc. 1).

Following the completion of discovery and the amendment of their complaint, the Esricks dismissed with prejudice all claims against Michael Lokai, and Judgment was entered to that effect on March 26, 2009 (Doc. 54). Thus, the only remaining Defendants are Kim and Dennis Mitchell and Kimberden.

The Second Amended Complaint (Doc. 43), which controls this case, consists of five state law claims: (1) a claim for breach of oral contract against the Mitchells (Count I); (2) a claim for breach of oral contract against Kimberden (Count II); (3) a claim for fraudulent inducement against the Mitchells (Count III); (4) a claim for negligent misrepresentation against the Mitchells (Count IV); and (5) a claim for negligent misrepresentation against Kimberden (Count V). The Esricks seek compensatory and punitive damages, as well as attorney's fees and costs.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. Celetex, 477 U.S. at 324.

## Discussion

I. <u>The Plaintiffs' Motion for Partial Summary Judgment</u>

The Esricks argue that they are entitled to summary judgment on their breach of contract claims against the Mitchells and Kimberden, because the undisputed material facts demonstrate that there was a valid and enforceable oral contract, which the Defendants breached when they delivered a horse that was not within the Esricks' age requirements.

It is clear that the agreement between the Parties for the purchase of Tressor was an oral contract, and that such oral agreements are valid and enforceable under Florida law.[7] See Rubenstein v. Primedica Healthcare, Inc., 755 So. 2d 746 (Fla. 4th DCA 2000) (elements of a valid oral contract include mutual assent to a certain and definite proposition with no essential terms left open); Greer v. Williams, 375 So. 2d 333 (Fla. 3rd DCA 1979) (affirming jury verdict for breach of oral contract where seller refused to accept return of racehorse where defect in horse found post-delivery); see also Stanfield v. DeStefano, 300 So. 2d 712 (Fla. 2nd DCA 1974) (discussing proper venue for cause of action for breach of oral express warranty in sale of show horse). To the extent Florida's statute of frauds concerning the sale of goods is involved, the Bill of Sale, which was undisputedly signed by Kim Mitchell, satisfies any writing requirements. See Fla. Stat. § 672.201(1).[8] See also Fla. Stat. § 672.201(3)(c) (contracts for the sale of goods which do not satisfy the writing requirement are still valid and enforceable "[w]ith respect to goods for which

---

[7]The Parties agree that Florida law governs this case.

[8]Fla. Stat. § 672.201(1) provides, in pertinent part:

> Except as otherwise provided in this section a contract for a sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

payment has been made and accepted or which have been received and accepted."); Shaffer v. Ricci, 603 So. 2d 566, 568 (Fla. 4th DCA 1992).

However, the existence of an oral contract is the only portion of this case that can be resolved at this stage - every other issue is replete with disputed material facts. For example, it is not clear as a matter of law whether the oral agreement was for the purchase of Tressor specifically, or whether it was for the purchase of a horse between the ages of 8 or 9 years old. Dennis Mitchell has testified that while he was aware that the Esricks desired a somewhat younger horse, it was his understanding that age was not of paramount concern. On the other hand, the Esricks have testified that age was the material and key factor in any horse purchase. Thus, there is a factual dispute concerning whether the age of a horse was a key term of the oral agreement.

Even assuming the age of the horse was a material term of the contract, and that this term was breached, there are also genuine factual disputes concerning whether the Esricks' actions after delivery of Tressor constitute acceptance of nonconforming goods.[9] Florida Statute § 672.606(1) provides that a buyer accepts goods when "after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that the buyer will take or retain them in spite of their nonconformity;" or "fails to make an

---

[9]The Esricks contend that even if they did accept Tressor "as is" they are still entitled to sue for breach of contract, and recover damages relating to the nonconformity. See Fla. Stat. § 672.714. Because the Court cannot resolve at this stage whether the Esricks did accept nonconforming goods, or even whether the horse was nonconforming, the Court also cannot resolve this issue at summary judgment.

effective rejection," or "[d]oes any act inconsistent with the seller's ownership." In this case, the Parties cannot agree on whether the Esricks signed and returned the Bill of Sale, which would constitute acceptance of nonconforming goods. The Parties also cannot agree on the substance of the April 1, 2007 telephone conversation between Dennis Mitchell and Steven Esrick, or on whether Devon ever rode Tressor in a horse show. These factual differences may or may not establish that the Esricks accepted the horse or took acts inconsistent with the Defendants' ownership of the horse. Moreover, there is some evidence that the Esricks have attempted to sell Tressor, which would also indicate acceptance. See e.g. Hawke Distributing, Inc. v. Nuevo Sol Partners Inc., 689 So. 2d 1202 (Fla. 3rd DCA 1997) (the act of reselling, or attempting to resell, allegedly nonconforming merchandise is deemed an acceptance as a matter of law because it is an act inconsistent with the seller's ownership of the same). Given these factual disputes, the Court cannot say that a breach of contract took place as a matter of law, and the Plaintiffs' Motion for Partial Summary Judgment will be denied.[10]

---

[10]The Defendants argue that the Esricks' claims cannot go forward because they are based on inconsistent allegations of multiple contracts, both written and oral. As the Court previously held in its Order denying the Defendants' motion to dismiss (Doc. 42), that is not what this case is about. It is clear, both from the Second Amended Complaint and the facts in evidence, that the Esricks are proceeding on a theory that the Defendants, both on their own behalf and on behalf of Kimberden, breached their oral agreement with the Esricks to sell them a horse that was between the ages of 8 and 9 years old. The Mitchells themselves have testified that they are employees, officers, and, at least with respect to Kim Mitchell, shareholders in Kimberden. It is also undisputed that Kimberden was operated solely by the Mitchells, and that the Mitchells are the persons who made all representations and performed all acts necessary to the execution and satisfaction of the oral agreement. Thus it is not inconsistent to allege the oral agreement was between the Esricks and all three remaining Defendants.

## II.  The Defendants' Motion for Summary Judgment

The Defendants seek summary judgment only as to Count III - the fraudulent inducement claim against the Mitchells.  Their sole argument in support of their motion is that any alleged misrepresentation concerning Tressor's true age was contradicted by the ensuing Bill of Sale, which the Mitchells contend is the written contract encompassing Tressor's sale.  Therefore, because the subsequent written agreement disclosed Tressor's true age, the Esricks would not have been justified in relying on any statements by the Mitchells concerning the age of the horse.  See Rose v. ADT Sec. Services, Inc., 989 So. 2d 1244 (Fla. 1st DCA 2008); Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp., 850 So. 2d 536, 542-43 (Fla. 5th DCA 2003).

The decisions the Mitchells rely on address situations where oral representations were made to induce a party to enter into a contract, and the truth concerning those representations was disclosed in writing contemporaneously or prior to execution and performance of the agreement.  The Defendants' argument fails in this case because it is clear that the Bill of Sale containing Tressor's true age was not provided to the Esricks until after they had fully performed what they understood to be their the oral agreement.  Kim Mitchell testified that she did not even prepare the Bill of Sale until after the Esricks received Tressor, and after the Mitchells and Kimberden received the additional $15,000.  Thus, the Esricks did not discover any alleged misrepresentations concerning Tressor's true age prior to their completion of the agreement.

12

The Court is further persuaded by the fact that there is no evidence that any Party ever required a writing prior to the performance of the contract, or that a writing was a crucial element of the sales agreement. Thus the only agreement between the Parties was an oral contract which had been fully performed, and the Bill of Sale was simply an after-the-fact writing memorializing the completed oral agreement.[11] To hold otherwise would be to permit parties to make all sorts of false misrepresentations to bind an innocent party to a contract, and then once the contract was fully performed, disclose the truth in writing and avoid liability. This cannot be the law, and the Mitchells have not submitted any decisional authority to support that position. The Defendants' motion will therefore be denied.

## **Conclusion**

Accordingly, upon due consideration, the Plaintiffs' Motion for Partial Summary Judgment as to Liability of Defendants Dennis Mitchell, Kim Burnette, a/k/a Kim Burnette Mitchell, and Kimberden Farm, Inc., for Breach of Contract (Doc. 56) is DENIED. Defendants Dennis Mitchell, Kim Burnette Mitchell, and Kimberden Farm, Inc.'s Motion for Summary Judgment (Doc. 59) is also DENIED.

IT IS SO ORDERED.

---

[11]The Court further notes that the Bill of Sale does not contain a merger or integration clause which would exclude the enforcement of any other oral or written agreements. See Corporate Financial, Inc. v. Principal Life Ins. Co., 461 F. Supp. 2d 1274, 1291 (S.D. Fla. 2006). Further, the fact that the Court has held that the Bill of Sale satisfies the statute of frauds writing requirement, does not mean that the Bill of Sale is a valid or enforceable contract.

DONE and ORDERED at Ocala, Florida this 15th day of September, 2009.

_____
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record